**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

UNITED STATES OF AMERICA

v.                                          CASE NO.  8:15-CR-424-T-36MAP

JANIER ARAUJO GONZALEZ
_____/

DEFENDANT GONZALEZ'S SENTENCING MEMORANDUM AND MOTION FOR

VARIANCE FROM THE SENTENCING GUIDELINES

Defendant Gonzalez files this sentencing memorandum for the Court's consideration in the above matter and respectfully requests that this Court ultimately vary from the final calculation of the guideline range based on § 18 U.S.C. 3553(a) factors.  In addition, the Defendant has certain sentencing recommendations he would like the Court to take into consideration.

**Variance Based on § 18 U.S.C. 3553(a) Factors**

\*        The history and characteristics of the Defendant

Defendant Gonzalez requests that this Court downward depart and vary from the applicable guideline range based on the factors enumerated in § 18 U.S.C. 3553(a). The PSR provides a comprehensive explanation of the difficult circumstances Mr. Gonzalez has dealt with throughout his life in Colombia prior to being brought to this country for prosecution: extreme poverty, lack of social services and educational and economic opportunities, an adverse political climate, and an exposure to risk of harm from rebel or terrorist organizations, among others. These factors when taken into consideration together warrant a multi-level variance from the applicable guideline range.

The hope for prosperity and the daunting escape out from under the heavy blanket of poverty and adverse life circumstances are but a pipe dream for most men and women born and raised in poor, rural Colombia. In general, these poor souls lack basic necessities, money, education, and opportunities. In America it is almost a given that the overwhelming majority of the population would grow up, if born and raised here, with at least the most basic aspects of modern, civilized life: a solid housing structure (something not akin to a hut or flimsy shanty with a cardboard roof); basic plumbing and running water; a proper bathroom instead of hole in the ground out back; electricity, etc. Even the poorest of the nation's public housing accommodations have these basic necessities of modern life. Mr. Gonzalez was born to a poor family in rural Colombia and therefore had no such fundamental accommodations, utilities, and services.

Proper publicly funded education from kindergarten through highschool, like we know it here in the United States, was non-existent and unavailable to someone like Mr. Gonzalez. As the Court can read from the PSR, Mr. Gonzalez had to drop to out of school at the age of nine to work as fishermen in order to help provide his family.  At the age of nine a boy should be learning arithmetic, history, and fantasizing about teaming up with Batman to ruin the dastardly plans of his nemesis the Joker – not working 14-hour days on a rickety boat hauling in heavy nets that scar the hands and tire the body. Most of the men in his family only progressed to a rudimentary education level in school, if that, and then were forced to become fishermen when they were only boys; the women fare even worse, having less education and opportunities than the men, and are resigned to being domestic servants, homemakers (in very poor homes under difficult circumstances) or working in low-paying jobs.

Hope for a better life, and the actual realization of it, is a grueling obstacle for men like

Mr. Gonzalez. However, Mr. Gonzalez now recognizes that committing a crime was not the answer to the dilemma. Mr. Gonzalez therefore accepts full responsibility for his actions and understands that his poor upbringing and difficulties in life do not absolve him from his criminal actions. He understands and accepts that he must be punished. However, he begs mercy of the Court and requests a minimal incarceretaive sentence.

\*   The need for the sentence imposed, reflection for seriousness of offense, deterrence, and protection of the public from crimes of the defendant.

It can be reasonably argued that a multiple-year incarceretaive sentence (for 60 months) for a 45 year-old Colombian national, with no prior criminal convictions, who will be deported after his sentence is complete will absolutely reflect the seriousness of the offense, promote respect for the law, and will provide just punishment for the offense. In addition, such a sentence serves as an adequate deterrence to criminal conduct and protects the public from further crimes of the Defendant. It should be undisputed that the Defendant will be deported to Colombia after serving his sentence in this case and therefore will never be released into the general public in this country.

\*   The need to avoid unwarranted sentencing disparities amongst similarly situated defendants.

Defendant Gonzalez – as a non-U.S. citizen subject to immediate deportation – argues that he will be treated in a disparate way by the Federal Bureau of Prisons (BOP) from other similarly situated defendants who are citizens of the United States with similar records, who have been found guilty of similar crimes. This difference in treatment amounts to an unwarranted sentencing disparity and should be rectified by this Court.  Defendant Gonzalez argues that inmates such as him who are under orders of deportation, exclusion, or removal following their

sentences are discriminated against when it comes to consideration for acceptance into the various programs and services offered by the BOP. In other words, the non-U.S. citizen is treated more harshly and is offered less programs and services than a U.S. citizen sentenced for similar conduct with a similar criminal record. What shocks the conscience even more is that Defendant Gonzalez was brought to this country solely for prosecution after having been interdicted on a go fast vessel in the waters off Central America. There is no evidence that the Defendant ever intended to step foot on American soil. Yet when U.S. authorities drag him here in chains for prosecution, BOP intentionally treats him differently than his fellow drug smuggler who happens to be a U.S. citizen. This injustice is completely contrary to the purpose of the sentencing guidelines and results in an unwarranted sentencing disparity.

     Defendant Gonzalez has a good faith belief that his eligibility in educational and vocational programs (like UNICOR and others) will be restricted, if not made completely impossible, due to his immigration status. See "A Directory of Bureau of Prisons' National Programs",https://www.bop.gov/inmates/custody_and_care/docs/BOPNationalProgramCatalog.pdf, (2015) describing lack of eligibility for inmates subject to immediate deportation. The BOP's own website data indicates that there are clear preferences for certain inmates in determining eligibility for certain programs. Non-U.S. citizens subject to immediate deportation are at the bottom of the totem pole and receive the least opportunities and are therefore treated in a disparate manner. Defendant Gonzalez anticipates that the United States Probation Office will be able to educate the Court more thoroughly on this issue at sentencing even though it has not been considered as a factor for variance in th PSR.

     This Court should reduce the sentence of Defendant based on this factor. The Defendant argues that it is an injustice for two similarly situated defendants, who are sentenced to the same

sentence -- for the same crimes, having the same prior criminal history, if any – but one defendant through no fault of his own, other than the happenstance of his country of birth, receives harsher, more punitive treatment while incarcerated solely because he is not an American citizen. This disparity is not just an administrative distinction or minor infringement but an actual punishment, which should be considered as a measure or component of an actual sentence. See *United States v. Navarro-Diaz*, 420 F.3d 581, 588-89 (6th Cir. 2005) (in illegal reentry case with guideline range of 57-71 months, case remanded under *Booker* where district court noted defendant would be punished more "harshly" than citizen because he was not eligible for six months half-way house confinement at the end of his sentence).

**Specific Sentencing Recommendations**

Defendant Gonzalez requests that this Court recommend incarceration at FCI Miami and that he be allowed to participate in educational and vocational services, including English as a second language courses and UNICOR programs.

WHEREFORE the Defendant requests that this Court take into consideration all of the arguments made herein and for other such relief as this Court deems just and appropriate.

Respectfully Submitted,

S/ Nicholas G. Matassini
Nicholas G. Matassini, Esquire
Florida Bar Number: 737704
ngm@matassinilaw.com
The Matassini Law Firm, P.A.
2811 W. Kennedy Blvd.
Tampa, Florida 33609
Telephone (813) 879-6227
Facsimile (813) 873-2209
Counsel for Defendant Gonzalez

CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2016 a copy of the foregoing sentencing memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

Dated : March 7, 2016.

S/ Nicholas G. Matassini
Nicholas G. Matassini, Esquire
Florida Bar Number: 737704
Counsel for Defendant Gonzalez